CALDERONE, Appellant,

v.

JIM'S BODY SHOP, Appellee.

[Cite as *Calderone v. Jim's Body Shop* (1991), 75 Ohio App.3d 506.]

Court of Appeals of Ohio,
Greene County.

No. 90 CA 121.

Decided Aug. 12, 1991.

*Joe Cloud,* for appellant.

*Gerald E. Schlafman,* for appellee.

WOLFF, Judge.

Wendy Calderone appeals from the judgment of the Fairborn Municipal Court which dismissed her complaint at the end of her case in chief.

In November, 1989, the front wheel on Calderone's Chevrolet Celebrity began to wobble and shake. After getting several estimates, she took the car to Jim's Body Shop ("Jim's") in Fairborn, Ohio for an estimate. Calderone explained the problem to Jim Breeding. She also told him that she had received several other estimates which indicated that the repairs called for were the replacement of the complete left front axle, the repair of the right front axle, the replacement of the shock absorbers, and the rotation and alignment of the tires. At least one written estimate projected a total cost of $434.37.

Breeding told Calderone that in his opinion her car needed both front axles to be replaced as well as a front-end alignment, new rear-end shock absorbers, and new front-end struts. He estimated the cost would be $675.00 for the replacement of the axles and $338.00 for the rest of the work. Breeding then told her that the car was in such bad shape that it would be dangerous to drive it in its present condition. Calderone consulted with her mother who had accompanied her to Jim's and then decided to have Jim's do the repair work. She so decided because she was a professional nanny, and her young charge frequently accompanied her on her driving errands. She also believed that although Breeding's estimate was considerably higher than other estimates she had received, the higher cost would be worth it since the axles installed by Jim's would be new.

Breeding told her that the repairs would be done over the weekend, and she could pick the car up on Monday. Later that evening, Calderone learned from her cousin Brian Aber, an auto mechanic, that he did not think the axles needed to be replaced. Aber had worked on Calderone's car the previous weekend and had inspected the axles. Calderone then called Jim's the next morning and attempted to cancel the work. She was told that the repairs were already finished because the mechanic had worked overtime to complete the repairs because he had known the importance of her car in her job.

When Calderone picked up her car, she requested the return of the old parts which had been replaced. Breeding indicated that he no longer had them because he had returned them to the supplier in exchange for the new front axles, struts, and shock absorbers. Calderone paid $990 for the repairs.

The following weekend, Aber again looked at Calderone's car because Calderone was taking a trip in it out of state. Aber informed Calderone that the left front axle had been replaced by a reconditioned part, and the right front axle had not been replaced at all. After returning from her trip, Calderone and her mother went to Jim's and confronted Breeding with this information. Breeding refused to admit that he had done anything wrong and denied that he had promised to install brand new axles. He did agree that if Calderone could find struts and shock absorbers cheaper any place else, he would refund the difference. He refused to discuss the axles. Calderone then contacted several automotive part stores, automobile wreckage companies, and Chevrolet dealerships requesting information on the cost of reconditioned and new front-end axles. She learned that used axles cost between $50 and $125 apiece and new ones cost approximately $400 to $500 apiece.

In February, 1990, Calderone filed a complaint against Jim's alleging violations of R.C. 1345.02 (unfair and deceptive sales practices) and R.C. 1345.03 (unconscionable sales practices), as well as fraud and breach of oral

contract. She subsequently moved for summary judgment on the grounds that the written estimate prepared by Jim's failed, as a matter of law, to comply with the requirements of R.C. 1345.02. Jim's also moved for summary judgment, claiming Calderone's monetary demand exceeded the court's jurisdictional limit. Calderone amended her prayer for relief to comply with the court's jurisdictional limit. The trial court then rendered a partial summary judgment in Calderone's favor finding that Jim's had violated the Ohio Consumer Sales Practices Act of R.C. 1345.02 *et seq.* and the substantive rules interpreting the Act. The trial court awarded Calderone $200 for each of the three violations, as required under R.C. 1345.09, but held that there were no actual damages as a result of those violations.

Calderone proceeded to trial on the remaining issues. At the close of Calderone's evidence, Jim's orally moved for dismissal on the grounds that Calderone had failed to prove ownership of the car, pursuant to R.C. 4505.04, which Jim's claimed was an essential element of the claims. Calderone then moved to reopen her case to prove ownership in the event the trial court agreed that R.C. 4505.04 applied. The court sustained the motion to dismiss on the grounds that Calderone had failed to prove ownership of the car pursuant to R.C. 4505.04(B). She was not permitted to reopen her case. Calderone appeals from this judgment, raising two assignments of error.

### First Assignment of Error

"The trial court committed error contrary to law and against the manifest weight of the evidence by finding the Ohio Certificate of Title Statute, Ohio Revised Code Section 4505.04(B), applicable to the Ohio Consumer Sales Practices Act, Ohio Revised Code Section 1345.02 and 1345.03.

In this assignment, Calderone argues that the trial court erroneously concluded that R.C. 4505.04(B) required it to dismiss her case. We agree.

R.C. 4505.04(B) provides as follows:

"(B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(1) By a certificate of title, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.19 of the Revised Code;

"(2) By admission in the pleadings or stipulation of the parties;

"(3) In an action by a secured party to enforce a security interest perfected under sections 1309.01 to 1309.50 of the Revised Code in accordance with

division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest."

The Ohio Supreme Court, in dicta, has construed this provision as applying in civil cases involving competing ownership or other interests in a motor vehicle. *State v. Rhodes* (1982), 2 Ohio St.3d 74, 75, 2 OBR 629, 630, 442 N.E.2d 1299, 1301. In *Rhodes*, the Supreme Court adopted the Lucas County Court of Appeals' explanation of the statute's purpose:

" 'The reason for the statute is to determine what proof, *i.e.*, certificate of title, should be required where a plaintiff is asserting some right pertaining to his allegedly owned automobile and defendant's defense or claim is based upon a claimed right, title or interest in the same automobile. The reason ceases when the defendant's defense is not based upon some claimed right, title or interest in the same automobile.' *Grogan Chrysler–Plymouth, Inc. v. Gottfried* (1978), 59 Ohio App.2d 91, 95 [13 O.O.3d 154, 156, 392 N.E.2d 1283, 1287] at fn. 4." *Id.*

More recently, the Ohio Supreme Court found R.C. 4505.04 to be irrelevant to ownership issues except those regarding importation of vehicles, rights between lienholders, rights of bona fide purchasers and instruments evidencing title and ownership. In all other cases, the Uniform Commercial Code governs ownership rights of motor vehicles. *Smith v. Nationwide Mut. Ins. Co.* (1988), 37 Ohio St.3d 150, 153, 524 N.E.2d 507, 509. Thus, the proof of title requirements set forth in R.C. 4505.04 apply only in cases where there are competing claims to a motor vehicle.

This appeal does not present us with competing claims to an automobile so as to make R.C. 4505.04 applicable. Neither Jim's nor any party other than Calderone claimed an ownership or other interest in Calderone's car.

Calderone's claims implicated only R.C. 1345.02 and 1345.03, and common-law theories of fraud and breach of contract. There is nothing in R.C. 1345.02 or 1345.03 which requires a consumer who brings a claim under either section to satisfy the proof of ownership requirements established under R.C. 4505.04. Proof of ownership is not a requirement under R.C. 1345.02 or R.C. 1345.03. All Calderone was required to do was substantiate her claims that Jim's violated the Consumer Sales Practices Act by charging her for repairs which were not done, by misleading her to believe that new parts would be installed when, in fact, the parts were reconditioned, and by grossly overcharging her for the parts which were installed. Neither proof of title nor proof of ownership was an essential element of any of these claims. The same was true as to the common-law claims. What was essential was proof by Calderone that she sustained personal loss as a result of Jim's statutory violations, fraud, and breach of contract.

We note that some proof of ownership has traditionally been required when one has claimed property damage. This is because the claimant must prove that he was damaged by the harm done to the property. However, Calderone did not claim property damage. Rather, she claimed to have been damaged by Jim's violations of the Ohio Consumer Sales Practices Act, fraud, and breach of contract.

The first assignment is sustained.

### Second Assignment of Error

"The trial court abused its discretion and committed prejudicial error against the plaintiff by failing to overrule the defendant's oral motion to dismiss and by not allowing the plaintiff to reopen her case."

In this assignment, Calderone argues that the trial court erred by refusing to allow her to reopen her case to prove ownership pursuant to R.C. 4505.04. Given our disposition of the first assignment, the second assignment is of academic interest only, and thus we overrule it, in that it is moot.

The judgment of the trial court will be reversed. The case will be remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN and GRADY, JJ., concur.