IN THE COURT OF APPEALS

AT KNOXVILLE

FILED

**July 30, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| BRUCE and CRYSTAL JASPER, | ) C/A NO. 03A01-9711-CV-00521 |
| Plaintiffs and Appellants, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| DON STRECK, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| | ) KNOX COUNTY CIRCUIT COURT |
| PETERBILT OF KNOXVILLE, INC., | ) |
| | ) |
| Defendant, | ) |
| Third-Party Plaintiff, and | ) |
| Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| JESS BRYANT, | ) |
| | ) HONORABLE HAROLD WIMBERLY, |
| Third-Party Defendant. | ) JUDGE |


For Appellants                       For Appellees

GARY BLACKBURN                       KEITH McCORD
JAY C. BALLARD                       McCord, Troutman & Irwin
Blackburn, Slobey, Freeman &         Knoxville, Tennessee
 Happell, P.C.
Nashville, Tennessee


O P I N I O N

AFFIRMED IN PART
REVERSED IN PART
REMANDED                                           Susano, J.

This case arises out of a transaction involving the original plaintiffs, Bruce Jasper and his wife, Crystal Jasper (collectively "the Jaspers"), and the defendant Peterbilt of Knoxville, Inc. ("Peterbilt"), regarding a 1994 Peterbilt tractor titled in the name of Mrs. Jasper's father, the third-party defendant Jess Bryant ("Bryant"). The Jaspers claimed an interest in the subject vehicle. They sued Peterbilt and its former employee, Don Streck ("Streck"),[1] claiming that the defendants were guilty of breach of contract, conversion, fraud, and negligent misrepresentation, in securing the transfer of the truck to Peterbilt. At the close of the Jaspers' proof before a jury, the trial court held that the Jaspers had "no claim" against Peterbilt, because the vehicle in question had not been titled to either of the Jaspers. Accordingly, the trial court directed a verdict in Peterbilt's favor,[2] and the Jaspers appealed, presenting the following two issues:

> 1. Do the Jaspers, who had an ownership interest in the 1994 truck according to Tennessee, Georgia and Ohio laws, have capacity and standing to maintain an action for conversion and fraud?
>
> 2. Do the Jaspers, regardless of any interest in the 1994 truck, have capacity and standing to maintain an action for fraud?[3]

---

[1]The record does not reflect the disposition of the claim against Streck; but it is clear that the trial court's judgment from which this appeal is being pursued brought this litigation to a close.

[2]Peterbilt filed a third-party complaint against Bryant, the title owner of the subject vehicle. With the dismissal of the original complaint, the third-party action was rendered moot.

[3]We note that the Jaspers do not address the breach of contract claim in either of the two issues presented for our review; by the same token, they have not advanced any argument in support of that claim in their brief. The statement of issues, as well as the rest of the brief, speak only in terms of the Jaspers' other claims, *i.e.*, conversion, fraud and misrepresentation. Issues not raised and argued in the brief are deemed waived. *See* Rule 13(b), T.R.A.P.; ***Blair v. Badenhope***, 940 S.W.2d 575, 576-77 (Tenn.App. 1996).

2

I. *Standard of Review*

We review a trial court's grant of a directed verdict under well-established rules:

> In ruling on the motion, the court must take the strongest legitimate view of the evidence in favor of the non-moving party. In other words, the court must remove any conflict in the evidence by construing it in the light most favorable to the non-movant and discarding all countervailing evidence. The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Sauls v. Evans*, 635 S.W.2d 377 (Tenn. 1982); *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn. 1977). If there is any doubt as to the proper conclusions to be drawn from the evidence, the motion must be denied. *Crosslin v. Alsup*, 594 S.W.2d 379 (Tenn. 1980).

*Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *see also* *Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993).

II. *Facts*

Construed in a light most favorable to the Jaspers, the relevant facts are these. The Jaspers, who are Ohio residents, have been in the trucking business since 1989. In 1993, a 1994 Peterbilt semi-tractor unit ("the 1994 truck") was purchased in Bryant's name from Nalley Motors in Atlanta. According to the Jaspers, they made the down payment on the 1994 truck, but the

3

purchase was made in Bryant's name in order to obtain financing.
After Bryant and the Jaspers returned to Ohio with the truck,
Bryant obtained a certificate of title from the State of Ohio in
his name only.  On August 17, 1993, Bryant and the Jaspers
executed an agreement that provides as follows:

> I, Jess Bryant, hereby lease to purchase one
> 1994 Peterbilt semi tractor trailer unit VIN#
> tractor 1XP5DB9X4RN339557 and trailer VIN#
> [number omitted in document] to Bruce N.
> Jasper and Crystal A. Jasper; All due and
> earned monies for above described vehicle(s)
> are sole responsibility of the Jasper's [sic]
> including; Monthly payments of M.E.T. dues
> icluding [sic] insurance, cargo, and
> liability, fuel taxes, IRP dues -- State and
> Federal taxes, all operating expenses (i.e.
> tolls, fuel etc.) and repair bills including
> routine equipment maintenance, also inclusive
> of monthly rental charge payable to Jess
> Bryant of $2000 until extent of 48 payments
> are made for clear title to the Jaspers.  The
> 15% down payment to be paid back as follows;
> $8000. to T&G Enterprises, Wilmington, N.C.
> $5000. to Jess Bryant, 394-B Seroco ave.,
> Newark, Oh.

Pursuant to the terms of this agreement, the Jaspers assumed the
specified payments and expenses and began using the 1994 truck in
their business.

In July, 1994, the Jaspers stopped at Peterbilt's
location in Knoxville to see Bryant, who was there in connection
with repairs to another truck.  They found Bryant talking with
Streck, a sales representative of Peterbilt.  Streck proposed to
the Jaspers a trade of the 1994 truck for a newer model,
explaining that they could actually lower their monthly payments
from approximately $2,500 to $2,100.  A representative of Paccar,
a truck financing company, who was present at the time, indicated

that such a deal would be "no problem," so long as Bryant co-signed the note. After consulting with Peterbilt's finance manager, Streck informed the Jaspers that "everything is go."

Although initially skeptical, the Jaspers ultimately agreed to the deal. They testified that they then signed a "purchase order," prepared by Streck, which set forth the details of the trade of the 1994 truck for the newer model. Although requested to do so, Peterbilt failed to produce this document at trial. It did produce a document entitled "Offer to Purchase," but this document reflects that the new truck was to be purchased in the name of Bryant's son -- and Mrs. Jasper's brother -- James H. Brown.[4] The Jaspers contend that the original purchase order, which did not list Brown as a purchaser, reflected the true agreement between the parties, and that the document produced by Peterbilt was altered and/or contained a forgery of Bryant's signature. Bryant and Mr. Jasper also testified that Bryant signed a release to enable the Jaspers to purchase the new truck.

In August, 1994, Streck called and informed Mr. Jasper that the new truck had arrived and that he should bring the 1994 truck down from Ohio to complete the transaction. According to Mr. Jasper, Streck stated: "[D]on't worry about a thing. It's all covered. Financing's all approved, it's been approved. You couldn't back out now if you wanted." The Jaspers drove the 1994 truck down to Knoxville on a Friday, but upon arriving at Peterbilt, they were informed that the new truck was not ready yet. Anticipating that they would soon be taking delivery of the

---

[4]The difference in last name was not explained.

5

new truck, the Jaspers turned over possession of the 1994 truck to Streck, along with a Power of Attorney and Bill of Sale that had been faxed to Ohio by Peterbilt and there signed in blank by Bryant. At Streck's suggestion, Mrs. Jasper also wrote two checks to the lender, Paccar, in the aggregate amount of about $3,600.

Planning to return the following Monday to pick up their new truck, the Jaspers drove back to Ohio. On Monday morning, however, Streck called to inform them that there was a problem with the financing and that Paccar wanted "accelerated payments" of $3,500 per month for the first two years of the deal, instead of the $2,100 per month originally promised by Streck. After first insisting on the original deal, the Jaspers then offered to pay $3000 per month. Streck indicated that he would make that proposal to Paccar; shortly thereafter, he called back and stated that the lender had decided not to finance the deal at all. He also informed the Jaspers that the 1994 truck had already been sold and was "long gone."

The Jaspers subsequently pursued other means of financing the purchase of the new truck but were ultimately unsuccessful. Without a truck, they were unable to continue their business. In November, 1995, the Jaspers filed this action, alleging that Peterbilt and Streck were guilty of a breach of the contract to purchase the new truck, conversion of the 1994 truck, fraud, and negligent misrepresentation.

6

The case proceeded to trial before a jury. The defendants sought to portray the facts in a much different light, depicting the transaction as a simple sale of the 1994 truck from Bryant, its title owner, to Peterbilt. Among other things, Peterbilt contended that due to poor health and financial difficulties, Bryant had authorized Peterbilt to sell his trucking equipment, including the 1994 truck; that the buyer of the new truck was to be Mrs. Jasper's brother, James Brown, but that Paccar had rejected the proposed deal; and that because the financing had never been approved, it, Peterbilt, had never accepted or signed the proposal. Peterbilt pointed to the fact that it had paid a fair price for the 1994 truck, and also introduced an October 11, 1994, letter, signed by Bryant, ratifying the sale and stating that the Jaspers were not parties to the transaction. Bryant and the Jaspers claimed that Bryant's signature on this letter had been forged, or that Bryant had not understood what he was signing.

As stated earlier, the trial court directed a verdict in favor of Peterbilt following the close of the Jaspers' proof, concluding that the Jaspers "have no claim against the defendant."

III. *Analysis*

The precise basis for the trial court's ruling is not clear; however, it apparently involves a question of standing, as opposed to one of capacity, real party in interest, or joinder. *See* Rules 17.01, 17.02, and 19.01, Tenn.R.Civ.P. Generally

7

speaking, a determination of whether a party has standing to sue depends upon whether that party has a personal stake in the outcome of the litigation sufficient to warrant the exercise of the court's power on its behalf. *Browning-Ferris Indus. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn.App. 1982).

In the instant case, the doubt regarding the Jaspers' standing revolves around the fact that the 1994 truck in question was titled to Bryant, and not to either of the Jaspers. Thus, the threshold question is whether the Jaspers had a legally-cognizable interest in the 1994 truck sufficient to provide a foundation for this action. However, we must first resolve a question not specifically addressed by the trial court, *i.e.*, which state's law applies to the analysis of the August 17, 1993, contract? Tennessee follows the traditional rule of *lex loci contractus*; thus, absent any enforceable choice-of-law provisions,[5] questions involving the construction of a contract are governed by the law of the state where the contract was made. *See* *Ohio Cas. Ins. Co. v. Travelers Indemnity Co.*, 493 S.W.2d 465, 467 (Tenn. 1973); *Solomon v. FloWarr Management, Inc.*, 777 S.W.2d 701, 704-05 (Tenn.App. 1989). In the instant case, Mrs. Jasper testified that the contract was executed in Ohio. Therefore, our construction of the contract is controlled by Ohio law.

Peterbilt agrees that Ohio law applies and specifically argues that Ohio Rev. Code Ann § 4505.04 precludes the Jaspers

---

[5]As can be seen from a review of the contract, there are none.

from asserting any interest in the 1994 truck.  That section provides, in pertinent part, as follows:

> (A) No person acquiring a motor vehicle from its owner whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until such person has had issued to him a certificate of title to the motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.
>
> (B) Subject to division (C) of this section [which is not applicable to this action], no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of or mortgaged or encumbered, unless evidenced:
>
> (1) By a certificate of title,....
>
>         \*     \*     \*

According to Peterbilt, this statute compels a finding that the Jaspers lack standing to assert an interest in the 1994 truck.

A review of Ohio appellate cases applying § 4505.04 reveals that it is limited in scope.  The Ohio Supreme Court has held that § 4505.04 is "irrelevant to ownership issues except those regarding importation of vehicles, rights between lienholders, rights of bona fide purchasers and instruments evidencing title and ownership." *Calderone v. Jim's Body Shop*, 599 N.E.2d 848, 851 (Ohio App. 1991)(citing *Smith v. Nationwide Mut. Ins. Co.*, 524 N.E. 2d 507, 509 (Ohio 1988)); *see also*

9

*Hoegler v. Hamper*, 607 N.E.2d 89, 91 (Ohio App. 1992). As explained by the Ohio Supreme Court,

> [t]he purpose of [§ 4505.04] is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of, motor vehicles.
>
>        *    *    *
>
> [§] 4505.04 was intended to apply to litigation where the parties were rival claimants to title, *i.e.*, ownership of the automobile; to contests between the alleged owner and lien claimants; to litigation between the owner holding the valid certificate of title and one holding a stolen, forged or otherwise invalidly issued certificate of title; and to similar situations.

*Hughes v. Al Green, Inc.*, 418 N.E.2d 1355, 1358 (Ohio 1981) (citations omitted). Thus, it is well-established that the statute's "proof of title requirements... apply only in cases where there are competing claims to a motor vehicle." *Calderone*, 599 N.E.2d at 851; *Hoegler*, 607 N.E.2d at 90. Significantly, it also has been held that the statute "was not adopted to clarify contractual rights and duties." *Hughes*, 418 N.E.2d at 1358.

This case does not involve competing claims to ownership of the 1994 truck -- this is not a lawsuit between Bryant and the Jaspers; instead, it involves a claim of conversion, fraud and misrepresentation surrounding the transfer of the 1994 truck to Peterbilt. *See Calderone*, 599 N.E.2d at 851, and *Hoegler*, 607 N.E.2d at 90. The Jaspers simply seek to

10

recover for the deprivation of their interest in the vehicle and
other damages.

It is clear that the statute in question, and the cases
that have applied it, do not preclude one who is not the holder
of the certificate of title from asserting a claim based upon
some legally-cognizable interest in the vehicle. In fact,
several Ohio decisions have restricted application of the statute
while acknowledging the existence of other non-title interests in
a motor vehicle. *See, e.g., Gibson v. Dan Phillips Repair Serv.*,
1998 WL 32587 (Ohio App., January 30, 1998)(plaintiff, whose ex-
husband was still title owner of van, nevertheless had interest
in the vehicle sufficient to give her standing to sue for
unauthorized repairs thereto); *Simmons v. Dimitrouleas
Wallcovering, Inc.*, 1995 WL 19136 (Ohio App., January 18,
1995)(upholding recovery based on theory of unjust enrichment for
improvements and payments to seller of truck who repossessed
vehicle, because there were no competing claims for ownership);
*Plum v. Gelateria Umbertos, Inc.*, 1987 WL 27797 (Ohio App.,
December 8, 1987)(recognizing a leasehold interest in a truck as
distinct from a "title or ownership" interest, and rejecting the
argument that the trial court's grant of summary judgment for
defendant, on plaintiff's claim for conversion of that interest,
was predicated on § 4505.04); *Graham Leasing Corp. v. Barr
Trucking*, 1981 WL 3436 (Ohio App., August 27, 1981)(under lease
of truck, "it is clear that the right of possession and use of
the vehicle is transferred to the lessee or customer, thus an
incident of ownership is transferred."). Furthermore, in a

11

decision involving an action to establish a resulting trust in a truck, the Ohio Court of Appeals said the following:

> Was it the intention of the Legislature, when it enacted the certificate of title law, to remove from the law of trusts that species of personal property known as motor vehicles, so that under no circumstances could the legal title, as evidenced by a certificate of title, be in one person and the beneficial interest remain in another? We do not believe that any such thought was in the legislative mind when it enacted [the predecessor to § 4505.04].

*Douglas v. Hubbard*, 107 N.E.2d 884, 886 (Ohio App. 1951).

Given the foregoing, we find that Ohio Rev. Code Ann. § 4505.04 does not present a legal bar to the Jaspers' claims, even though the certificate of title to the 1994 truck remained in Bryant's name.

We now turn our attention to the contract between Bryant and the Jaspers for the purpose of ascertaining the Jaspers' interest in the 1994 truck under Ohio law. First and foremost, we must interpret the contract so as to effectuate the intent of the parties. *Pharmacia Hepar, Inc. v. City of Franklin*, 676 N.E.2d 587, 592 (Ohio App. 1996); *Forstner v. Forstner*, 588 N.E.2d 285, 288 (Ohio App. 1990). We initially look to the language of the contract. *Pharmacia Hepar, Inc.*, 676 N.E.2d at 592. While the contract contains the language, "lease to purchase" -- signifying a lease of the vehicle -- the totality of the language of the contract, as illuminated by the testimony, indicates otherwise. *Cf. State ex rel. Celebrezze v. Tele-*

12

*Communications, Inc.*, 601 N.E.2d 234, 239-41 (Ohio Ct. Cl. 1990).[6] We find and hold that the substance of the agreement between Bryant and the Jaspers is that of a contract to transfer title upon the satisfaction of certain conditions -- a transaction akin to a conditional sale. *See Rockwell v. Thomas*, 189 N.E.2d 168, 170 (Ohio App. 1962) ("[t]he prime essential element and distinguishing feature of a contract of conditional sale is the reservation of title in the seller until the performance of some condition or the happening of some contingency, usually the full payment of the purchase price."); *see also State ex rel. Celebrezze,* 601 N.E.2d at 239-41, and *Bellish v. C.I.T. Corp.*, 50 N.E.2d 147, 150 (Ohio 1943).

The contract, which was obviously drafted by a lay person, is ambiguous, and hence the trial court was correct in permitting the introduction of parol evidence to explain its terms. *See Pharmacia Hepar, Inc.*, 676 N.E.2d at 592; *Forstner*, 588 N.E.2d at 288; *Bellish*, 50 N.E.2d at 150. This testimony indicates that the parties to the contract intended that the Jaspers would have exclusive use and possession of, and an equitable ownership interest in, the 1994 truck. Pursuant to this interest, the Jaspers took possession of the vehicle and commenced payment of the expenses set forth in the contract. When all of the conditions of the contract had been satisfied, the Jaspers were to then receive full title to the vehicle. Until then, the Jaspers had a legally-cognizable interest,

---

[6]The fact that the contract does not provide for the return of the truck to Bryant at the end of the term, but instead contemplates the transfer of title to the Jaspers upon full payment, indicates that it is not a true lease. *Id.*

13

including the right to exclusive possession.  If the jury finds that they were tortiously deprived of that interest, it will be the duty of that body to determine the value of that interest as shown by the proof so that compensatory damages can be awarded.

We find that the August 17, 1993, contract conferred upon the Jaspers a legally-cognizable interest in the 1994 truck, and that the Jaspers therefore have standing to bring this action.

The parties had different theories and sharply contrasting evidence as to the facts surrounding the transfer of the 1994 truck to Peterbilt.  It is the prerogative of the jury to determine which version is true.  Taking the strongest legitimate view of the evidence in favor of the Jaspers, *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994), we find that a jury reasonably could conclude that Peterbilt tortiously deprived the Jaspers of their interest in the 1994 truck.  Accordingly, we hold that the trial court erred in directing a verdict in favor of Peterbilt.[7]

## IV. *Conclusion*

It results that the judgment of the trial court dismissing the Jaspers' conversion, fraud and misrepresentation claims is reversed.  The judgment of the trial court as to the breach of contract theory is affirmed.  This case is remanded to

---

[7]In light of this holding, it is obvious that we do not agree with Peterbilt's argument that this appeal is frivolous under T.C.A. § 27-1-122.

14

the trial court for further proceedings, not inconsistent with this opinion.   Costs on appeal are assessed to the appellee.

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Herschel P. Franks, J.

_____
Don T. McMurray, J.