[Cite as *Martin v. Becker*, 2025-Ohio-2356.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| DAVID MARTIN | : | |
| | : | C.A. No. 30323 |
| Appellant | : | |
| | : | Trial Court Case No. 2021 CV 03131 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| LINDA BECKER, ET AL. | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 3, 2025, the judgment of the trial court is reversed and remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

[[Applied Signature]]
CHRISTOPHER B. EPLEY, PRESIDING JUDGE

[[Applied Signature 2]]
MARY K. HUFFMAN, JUDGE

[[Applied Signature 3]]

ROBERT G. HANSEMAN, JUDGE

**OPINION**

MONTGOMERY C.A. No. 30323

DAVID MARTIN, Appellant, Pro Se
CRAIG T. MATTHEWS & STEPHEN HARKLEROAD, Attorneys for Appellees

EPLEY, P.J.

{¶ 1} David Martin, pro se, appeals from a judgment of the Montgomery County Court of Common Pleas, which awarded damages to Josey Becker (fka Joseph Becker III), Olivia Becker, and Linda Becker (collectively, the Beckers) in the amount of $66,052.21 on their counterclaims regarding remodeling work on Josey and Olivia's condominium. For the following reasons, the trial court's judgment against Martin is reversed, and the matter is remanded for further proceedings.

**I. Facts and Procedural History**

{¶ 2} In 2020, Josey and Olivia Becker owned a residential condominium located at 6456 Quintessa Court in Dayton. Linda Becker is Josey's mother and, at that time, was Olivia's mother-in-law. Martin is a contractor who conducts business as D&D Property Services LLC.

{¶ 3} On October 20, 2020, Linda met with Martin, whom she had used previously for work on her own residence, to discuss plumbing work at the condominium. According to Martin, he was hired to repair water leaks, repair sunken floors, install laminate flooring,

refinish a stairway, repair a hot water heater, perform electrical work, provide and install certain appliances, fixtures, and faucets, remove and dispose of old carpeting and baseboard, install and paint new baseboards, paint various rooms and the front door, move furniture, pack and relocate personal items to the second floor of the home, and pressure wash the patio.   He stated that the agreed rate was $42 per hour and that he performed the work from late-October to mid-December 2020.   The Beckers made several payments totaling $4,000 for the work. (It is unclear which of the Beckers contributed toward the payments and in what amount.)   According to an invoice on D&D letterhead, the Beckers owed an additional $7,816.24.

{¶ 4} In contrast, the Beckers maintained that D&D never provided an estimate, and the parties never agreed upon a price.   They asserted that D&D, without authorization and prior notice, initiated repairs that they did not feel were necessary and that they were overcharged for the work Martin had done.   They further claimed that extensive repairs were necessary to remedy the situation.

{¶ 5} In January 2021, Martin filed a mechanic's lien in the amount of $8,816.24 (due to what appears to be a typographical error, this amount did not correspond to the amount allegedly owed). Several months later, Josey and Olivia Becker executed a notice to commence suit on the mechanic's lien.   The notice was served on June 1, 2021.

{¶ 6} On August 2, 2021, Martin, individually and on behalf of D&D, filed suit against the Beckers, seeking judgment on his mechanic's lien and payment of the amount due.   He attached the mechanic's lien and the invoice purportedly from D&D showing that $7,816.24 remained due and owing.   The Beckers moved to dismiss the case because Martin, as a non-attorney, was not authorized to file a lawsuit on D&D's behalf.   In response, Martin moved to file an amended complaint without D&D as a party-plaintiff.   The court allowed

the amendment.

{¶ 7} Olivia and Josey's marriage ended, and on December 9, 2021, Olivia conveyed her interest in the property to Josey by quit claim deed. *See* Martin Motion for Summary Judgment, Ex. C.

{¶ 8} In May 2022, the Beckers filed an answer to the amended complaint, denying the allegations and raising numerous affirmative defenses. They also included counterclaims against Martin and D&D for (1) negligence, (2) creation of an unsafe and unsanitary dwelling, (3) breach of contract, (4) violation of the Consumer Sales Practices Act (unfair and deceptive trade practices), and (5) violation of the Consumer Sales Practices Act (unconscionable acts). The Beckers attached the invoice from D&D and a damage appraisal prepared by Rob Fickert of FICO-US, Inc. Martin filed an answer to the counterclaims, denying the allegations.

{¶ 9} Concurrently with their answer and counterclaims, the Beckers moved to add D&D as a necessary party. The court granted the motion.

{¶ 10} On August 1, 2022, Josey sold the Quintessa Court property to a third-party. A release of lien bond in the amount of $13,224.36 was recorded the same day. *See* Martin Motion for Summary Judgment, Ex. F.

{¶ 11} In November 2022, after D&D was properly served but failed to respond to the counterclaims, the Beckers moved for a default judgment against it. The trial court granted a default judgment against D&D on November 29, 2022. The Beckers later added a "counterclaim" against Martin and D&D for piercing the corporate veil, asserting that Martin and D&D were one and the same. D&D did not respond to this claim either, and the trial court granted a default judgment against the company on piercing the corporate veil. Martin denied these new allegations.

{¶ 12} Ultimately, the parties filed cross-motions for summary judgment. In his November 23, 2022 motion, Martin asserted that he had performed all the identified tasks or projects, that he had charged less than what a typical contractor would charge, and that Linda had previously stated the work was adequate. He refuted the Beckers' claims and argued that Josey and Olivia Becker had improperly conveyed the property during the pendency of the action. Martin supported his motion with his own affidavit, the affidavits of two others, and exhibits to show the nature and reasonableness of the parties' agreement.

{¶ 13} The Beckers moved for summary judgment against Martin on their claim for piercing the corporate veil, emphasizing that Martin had failed to respond to their request for admissions, which related to that claim. By separate motion, they sought judgment against Martin on their original five counterclaims, arguing that the court had granted judgment against D&D on those claims and there were no genuine issues of material fact that Martin had performed the work. The Beckers did not provide any additional evidence, such as affidavits or exhibits, to support their motion.

{¶ 14} On February 13, 2024, the trial court denied Martin's motion for summary judgment on his breach of contract claim and granted the Beckers' summary judgment motion on their breach of contract counterclaim. The court further granted summary judgment to the Beckers on their counterclaims regarding creating an unsafe and unsanitary condition, violating the CSPA under R.C. 1345.02(A) (unfair and deceptive act) and R.C. 1345.03(B)(2) (unconscionable act), and piercing the corporate veil. It granted summary judgment to Martin on the counterclaims of negligence and violating the CSPA under R.C. 1345.03(B)(3) and (B)(5) (unconscionable acts). The court relied in large part on Martin's failure to respond to the Beckers' request for admissions. The trial court certified the decision as immediately appealable under Civ.R. 54(B). It indicated that a non-oral

damages hearing (simultaneous written submissions) would be set more than 30 days after the filing of the decision if the court retained jurisdiction over the case.

{¶ 15} Neither Martin nor D&D appealed the February 13, 2024 judgment. Martin sought reconsideration of the judgment, emphasizing in part that he had responded to the Beckers' interrogatories and request for admissions. He further sought dismissal of the counterclaims due to the Beckers' lack of standing. The court overruled both motions on the grounds that the February 13 judgment was a final appealable order on all claims and the motions were an improper substitute for an appeal. It further ruled that Martin's standing argument was moot and untimely; the court treated the argument as a challenge to personal jurisdiction.

{¶ 16} The trial court scheduled a non-oral damages hearing for June 14, 2024, and ordered the parties to "file admissible evidence of damages" at that time. The Beckers filed a memorandum to support their damages claim, along with affidavits from Fickert and from their attorney. Neither Martin nor D&D filed a memorandum or evidence.

{¶ 17} On November 14, 2024, the trial court entered judgment in favor of the Beckers in the amount of $66,052.21. Specifically, it awarded treble actual damages of $26,270.91 ($8,756.97 x 3) for the CSPA claims, $200 for a second violation of the CSPA, $5,000 in non-economic damages, $31,870.85 in attorney fees, and $2,710.45 in costs.

{¶ 18} Martin appeals from the trial court's February 13, 2024 summary judgment decision and its November 14, 2024 judgment on damages. We previously determined that his appeal from the summary judgment decision was untimely with respect to his own claims and, therefore, we have limited this appeal to the judgment on the counterclaims. Order (Jan. 15, 2025). D&D did not file any appeal and, consequently, the judgment against it is not affected by this appeal.

{¶ 19} Martin raises seven assignments of error, which we will address in a manner that facilitates our analysis.

### III. Martin's Motion for Summary Judgment and Relevant Evidence

{¶ 20} We begin with Martin's sixth assignment of error, which asserts that the trial court erred in denying his November 23, 2022 motion for summary judgment. Martin's motion for summary judgment addressed both his own claims and the Beckers' counterclaims. Although not expressly stated, we infer that Martin is also challenging the trial court's grant of summary judgment to the Beckers on those claims.

{¶ 21} Initially, we reiterate that the trial court's February 13, 2024 summary judgment decision constituted a final judgment with respect to Martin's claims against the Beckers. *See* R.C. 2505.02(B). The court further certified the judgment with the language of Civ.R. 54(B) – there is no just reason for delay – which made its ruling on Martin's claims immediately appealable. Because of the Civ.R. 54(B) certification, Martin was required to appeal the grant of summary judgment to the Beckers on his claims and the denial of his motion for summary judgment on his claims within 30 days of the February 13, 2024 judgment. He did not do so. Consequently, this court cannot consider any arguments challenging the court's summary judgment ruling on his claims.

{¶ 22} Not reviewable, therefore, are Martin's arguments related to Olivia's transfer of her interest in the property to Josey and Josey's sale of the Quintessa condominium to a third-party without complying with the procedures in R.C. 1311.11(C), which addresses the substitution of a release of lien bond for the mechanic's lien. *See also* R.C. 5311.12 (generally prohibiting the sale of a condominium until all liens are paid and satisfied, unless the unit is released from the operation of the lien or the purchaser assumes the lien).

Regardless, any error in the Beckers' failure to comply with R.C. 1311.11(C) is now moot, considering that Martin did not prevail on his claims.

{¶ 23} The same is not true of the trial court's summary judgment decision regarding the Beckers' counterclaims. Because the issue of damages was not resolved in the February 13, 2024 judgment, the trial court's summary judgment ruling on the Beckers' counterclaims was not final until the court's November 14, 2024 judgment on damages. We therefore have the authority to consider arguments challenging both the liability determination and the damages calculation regarding the counterclaims.

{¶ 24} The effect of this distinction is significant, particularly as it relates to whether the trial court erred as to the evidence it relied upon when ruling on the summary judgment motions regarding the Beckers' counterclaims. The Beckers emphasize that Martin failed to respond to their request for admissions, and the trial court properly deemed them admitted in determining that Martin violated the CSPA and breached the contract. Appellees' Brief at 9.

{¶ 25} Counsel for the Beckers filed an affidavit, dated April 27, 2023, attesting that neither Martin nor D&D had filed responses to the request for admissions. The discovery packets, including the requests for admissions, were emailed to Martin and D&D on March 27, 2023, and counsel asked for a response within 28 days. Martin did not respond within that timeframe, and the Beckers' summary judgment motion on piercing the corporate veil was filed on April 27, 2023. Martin thereafter responded to the discovery requests on May 2, 2023. The court's discovery deadline was July 3, 2023. Martin opposed the Beckers' summary judgment motion on their counterclaims but failed to inform the court about his discovery responses. "It is well established that summary judgment may be granted based on a matter that is admitted through unanswered requests for admissions." (Citations

omitted.) *Natl. Collegiate Student Loan Trust 2005-3 v. Demers*, 2019-Ohio-1475, ¶ 17 (2d Dist.); *Velocity Invests., LLC v. Kunzler*, 2023-Ohio-1689, ¶ 10 (2d Dist.).

{¶ 26} Notably, Martin moved for reconsideration of the February 13, 2024 summary judgment decision, claiming that he responded to the discovery requests within the court's discovery deadline; Martin attached his discovery responses to the motion. Because the summary judgment decision as to the counterclaims was interlocutory, the trial court had the authority to reconsider that summary judgment ruling. *Nilavar v. Osborn*, 137 Ohio App.3d 469, 499 (2d Dist. 2000) (A trial court "retains jurisdiction to reconsider its interlocutory orders, either sua sponte or upon motion, any time before it enters final judgment in the case."). Moreover, the trial court had the discretion to allow the admissions to be withdrawn or amended. Civ.R. 36(B); *Union Sav. Bank v. Litteral*, 2012-Ohio-5108, ¶ 12 (2d Dist.) ("[A]ny matter admitted under Civ.R. 36 'is conclusively established unless the court on motion permits withdrawal or amendment of the admission.' "); *Bank of Am., N.A. v. Shailer*, 2021-Ohio-3939, ¶ 25 (2d Dist.). However, because it was under the mistaken belief that its summary judgment ruling was a final appealable order on all claims, the trial court did not recognize its authority to consider the merits of Martin's motion for reconsideration as to the counterclaims, nor did it exercise its discretion as to whether the belated answers should be allowed.

{¶ 27} In our view, the trial court's failure to properly consider whether Martin's belated answers to the requests for admissions should have been permitted and its summary judgment ruling on the counterclaims constituted errors of law that require reversal. Significantly, if the trial court had reconsidered its summary judgment ruling on the counterclaims and granted Martin leave to respond to the request for admissions out of time, genuine issues of material fact existed as to whether Martin was liable for the

counterclaims. In support of his motion for summary judgment, Martin provided a pricing estimate from Home Wyse for the work performed on the condominium, a printout of Linda's comments on the Better Business Bureau website, and affidavits from himself and two witnesses attesting that D&D never came up during the discussion between Martin and Linda, that Linda never complained about the work, that the condo was not made unsanitary or unsafe, and that the condo was not damaged by Martin. In addition, while D&D defaulted on the allegations regarding piercing the corporate veil, Martin had denied the allegations that he was operating as D&D during the project, and his answers to the request for admissions (if permitted) refuted the Beckers' claim that he and D&D were one and the same. Martin thus presented evidence to refute the Beckers' counterclaims and their claim to pierce the corporate veil to hold Martin personally liable for D&D. (D&D's admissions and default on the counterclaims and piercing the corporate veil were not binding on Martin individually.)

{¶ 28} Accordingly, the matter must be remanded to the trial court for it to consider whether Martin's untimely responses to the discovery requests, particularly the request for admissions, should be permitted and whether summary judgment in the Beckers' favor remains proper. Martin's sixth assignment of error is sustained to the extent that it challenged the trial court's grant of summary judgment to the Beckers on their counterclaims.

## II. The Beckers' Ability to Recover on Counterclaims

{¶ 29} Five of Martin's assignments of error challenge the trial court's award of damages to the Beckers. Specifically, they assert that the trial court erred in awarding actual economic damages (first assignment), noneconomic damages (second assignment), damages based on violations of the CSPA (third assignment), and attorney fees and costs (fourth assignment), and in concluding that the Beckers suffered $8,756.97 of actual

damages (fifth assignment). Martin's basis for each of these claims is that the Beckers lacked standing and suffered no damages once the condominium was sold.

### A. Standing

{¶ 30} Standing concerns the legal capacity of a party to seek relief for a claim in a court of law. *Logan v. Champaign Cty. Bd. of Elections*, 2023-Ohio-4688, ¶ 24 (2d Dist.), citing *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77 (1998). It is premised on the idea that "one having no right or interest to protect ordinarily may not invoke the jurisdiction of a court." (Citation omitted.) *State ex rel. Dallman v. Court of Common Pleas, Franklin Cty.*, 35 Ohio St.2d 176, 178 (1973). A party must have "some real interest in the subject matter of the action." *Id.* at 179; *see also Nationstar Mtge. LLC v. Anderson*, 2023-Ohio-3186, ¶ 15 (2d Dist.). Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue. *Verbillion v. Enon Sand & Gravel, LLC*, 2021-Ohio-3850, ¶ 41 (2d Dist.), citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27; *Logan* at ¶ 24. "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20.

{¶ 31} To establish standing, plaintiffs (or, in this case, counterclaimants) must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Moore* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). These three factors — injury, causation, and redressability — constitute "the irreducible constitutional minimum of standing." *Id.* Standing must exist when the claim is filed. *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 2012-Ohio-5017, ¶ 40 (lack of standing at the commencement of an action

requires dismissal).

{¶ 32} The question of standing is complicated somewhat by the Beckers' failure to allege facts regarding their respective interests in the Quintessa property. Martin alleged in his complaint that Josey and Olivia owned the condominium and that Linda acted as their agent when she contracted with him. Amended Complaint, ¶ 2-3. Rather than clarifying the matter, the Beckers responded that they were "without knowledge or information sufficient to form a belief as to the truth of" those allegations. Answer, ¶ 2-3. As to their own counterclaims, the Beckers did not include any allegations about the ownership of the Quintessa property and how Linda was authorized to enter into any contract regarding that property.

{¶ 33} A footnote in the Beckers' December 15, 2021 motion to dismiss appeared to clarify that Linda was Josey's mother and Olivia's mother-in-law and that Josey and Olivia (but not Linda) owned the property. However, when that motion was filed, Josey and Olivia apparently were no longer married, and Olivia had already conveyed her interest in the property to Josey. *See* Martin Motion for Summary Judgment, Ex. C. When the counterclaims were filed on May 24, 2022, Josey appears to have been the only owner of the property. *See id.*, Ex. D. Because Linda apparently never owned the property and there is no indication that she leased it from Josey and Olivia, we presume she was the authorized agent for them. *See* R.C. 1311.10(A).

{¶ 34} Nevertheless, the record demonstrates that all the Beckers had standing to bring their counterclaims. The claims arose from a contract between Martin and Linda for Martin and/or D&D to perform work on a condominium owned by Josey and Olivia. Although Linda did not own the property, Civ.R. 17(A) permits a claim to be brought by a person "with whom or in whose name a contract has been made for the benefit of another."

Martin does not dispute that Josey and Olivia owned the condo when the contract was made. Their continued ownership was not required to assert a claim under the CSPA. *Marsilio v. Brian Bennett Constr.*, 2008-Ohio-5049, ¶ 41 (7th Dist.); *Calderone v. Jim's Body Shop*, 75 Ohio App.3d 506, 510 (2d Dist. 1991) ("Proof of ownership is not a requirement under R.C. 1345.02 or R.C. 1345.03."). Their continued ownership was also not necessarily required to prove that the breach of contract caused them harm.

{¶ 35} Martin's standing argument is without merit.

### B. Evidence of Damages

{¶ 36} Martin further argues that the Beckers were not entitled to any damages. He asserts that they did not suffer any loss because they no longer own the property. The Beckers respond that they were not required to show damage to property to recover under the CSPA. Appellees' Brief at 8, citing *Calderone* at 511.

{¶ 37} In light of our disposition of the sixth assignment of error, we need not address Martin's argument regarding the amount of damages. We note, however, that the parties and the trial court generally treated the Beckers collectively, including in the court's judgment on damages. As the record now stands, it appears that Linda had a different interest in the condominium than Josey and Olivia and that Olivia's interest ended at a different time than Josey's. In addition, it is unclear who paid $4,000 to Martin and whether Linda, Josey, and Olivia incurred the same economic and noneconomic damages. If, on remand, it is again determined that the Beckers are entitled to judgment against Martin on one or more counterclaims (and we state no opinion on this issue), the court should be mindful that they potentially could have different types and amounts of damages.

{¶ 38} The first, second, third, fourth, and fifth assignments of error are overruled as moot.

**IV. Sanctions**

{¶ 39} In his seventh assignment of error, Martin claims that the trial court erred in failing to sanction the Beckers' attorney, sua sponte, for fraudulent misrepresentation and frivolous conduct. He states in his appellate brief that the counterclaims were "maliciously trumped-up" and remain unsubstantiated and that the Beckers' counsel improperly completed the interrogatories sent to Linda and provided fraudulent answers. Martin contends that counsel engaged in frivolous conduct by continuing the litigation after the condo was sold to a third-party. Martin also claims that Fickert's report did not constitute a proper expert report and was fraudulent.

{¶ 40} R.C. 2323.51 allows for sanctions where a party has engaged in frivolous conduct. *Duff v. Centrome, Inc.*, 2023-Ohio-1321, ¶ 29 (12th Dist.). In addition, "Civ.R. 37 provides a mechanism by which discovery rules can be enforced." *Rardin v. Salon Professional Academy, LLC*, 2017-Ohio-410, ¶ 17 (6th Dist.).

{¶ 41} Martin filed a motion to compel discovery and a motion in limine seeking to exclude Fickert's expert report. The trial court overruled both motions. Martin did not file a motion for sanctions under either R.C. 2323.51 or Civ.R 37, and given the court's rulings on the motions he did file, we cannot fault the trial court for failing to impose sanctions on the Beckers' counsel sua sponte.

{¶ 42} Martin's seventh assignment of error is overruled.

**IV. Conclusion**

{¶ 43} The trial court's judgment against Martin on the counterclaims is reversed, and the matter is remanded for further proceedings.

. . . . . . . . . . . . .

HUFFMAN, J. and HANSEMAN, J., concur.