[Cite as *Duff v. Centrome, Inc.*, 2023-Ohio-1321.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| PAMELA DUFF MUNDY, et al. | : | |
| Appellees, | : | CASE NO. CA2022-03-014 |
| | : | O P I N I O N |
| - vs - | | 4/24/2023 |
| | : | |
| CENTROME, INC., et al., | : | |
| Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CV90268

Robbins, Kelly, Patterson & Tucker, LPA, and Michael A. Galasso and Jarrod M. Mohler, for appellees, Pamela Duff Mundy, Joshua Humphries, and Kyle Landreth.

Lindhorst & Dreidame Co., L.P.A., and James F. Brockman, for appellee, O'Laughlin Industries, Inc.

Stites & Harbison, PLLC, and Cassandra L. Welch and Robin D. Miller, for appellant.

**HENDRICKSON, J.**

{¶1} Defendant-appellant, Mane, Inc., appeals from a decision of the Warren County Court of Common Pleas ordering it to pay attorney fees and expenses to defendant-appellee, O'Laughlin Industries, Inc. ("OLI"), and plaintiffs-appellees, Pamela Duff Mundy, as Administrator of the Estate of James Melvin Duff, deceased, Joshua Humphries, and

Kyle Landreth (collectively, "plaintiffs"), following a determination that Mane committed discovery violations. For the reasons set forth below, we reverse the trial court's decision and remand for further proceedings.

## I. FACTUAL & PROCEDURAL BACKGROUND

{¶2} Mane is a large flavoring company with several plants in Ohio. Plaintiffs are employees or former employees who worked in the microcapsule extruder department at Mane's Lebanon, Ohio facility.[1] From approximately 2012 to 2016, while in the course of their employment, plaintiffs were exposed to the ingredient diacetyl, which was a component used in some of the microcap flavors, that were in turn used to flavor other products. The diacetyl was distributed to Mane by OLI and eight other distributors.[2]

{¶3} Plaintiffs allege that they developed respiratory illnesses and lung disease from exposure to diacetyl while working at Mane. In September 2017, plaintiffs filed suit against Mane, OLI, and the eight other diacetyl distributors. In their Second Amended Complaint, plaintiffs set forth claims of strict liability and negligence under the Ohio Product Liability Act against OLI and the other diacetyl distributors, contending that the distributors' warnings about potential diacetyl hazards were inadequate and that they failed to take precautions that a reasonable person would take in supplying the diacetyl. Against Mane, plaintiffs set forth a claim for intentional tort, contending that Mane had actual knowledge of

---

1. In addition to James Melvin Duff, Joshua Humphries, and Kyle Landreth, employees Stefan Fee, Donald Coffman, Robert Geisler, Cortez Hamilton, Todd Richter, and Rashanna Dews were also named plaintiffs in the action. In a June 10, 2020 scheduling order, the trial court severed Duff's, Humphries', and Landreth's claims from those of the remaining plaintiffs, stating "the claims of plaintiffs Pamela Duff Mundy, [a]s Administrator of the Estate of Melvin Duff; Joshua Humphries; and Kyle Landreth shall be treated together in one proceeding and shall be and hereby are severed from the remainder of the plaintiffs' claims in Case No. 17 CV 90268 for the purposes of case specific discovery and trial, but shall retain the same case number." Fee's, Coffman's, Geisler's, Hamilton's, Richter's, and Dews' claims remain pending and they are not parties to the present appeal.

2. The other eight distributors of diacetyl were (1) Centrome, Inc., d/b/a Advanced Biotech, (2) Berje Inc., (3) Elan Chemical Co., Inc., (4) Vigon International, Inc., (5) Charkit Chemical Corp., (6) Alfrebro, LLC, (7) Wild Flavors, Inc., and (8) Archer-Daniles-Midland Co. These eight distributors are not parties to the present appeal.

the risks and hazards of flavorings-related lung diseases arising from workplace exposure to diacetyl, but it deliberately and intentionally misrepresented the risks and hazards to its employees. Plaintiffs allege that Mane acted "with the intent to injure another, including Plaintiffs, or with the belief that the injury was substantially certain to occur and acted with deliberate intent to cause an employee, including Plaintiffs, to suffer an injury, a disease, a condition, or death within the meaning of R.C. 2745.01."

{¶4} Mane and OLI filed answers denying the allegations set forth in plaintiffs' second amended complaint. As a defense to plaintiffs' claims, Mane alleged in its answer that it "did not create and was not put on notice of the conditions claimed by Plaintiffs to have proximately caused Plaintiffs to become ill and injured." Mane further alleged that "knowledge of the danger that caused harm was not reasonably available or attainable in light of existing scientific, technical, or medical information" and claimed that "[a]ny exposure of Plaintiffs to diacetyl * * * was de minimis or inconsequential." OLI, in turn, asserted as an affirmative defense that "Plaintiffs' claims are barred because they were employed by a sophisticated employer so that any duty of [OLI] to warn of any danger incident to diacetyl or diacetyl products, * * * was discharged by Plaintiffs' employer's intervening duty to give them all required warnings."

{¶5} The parties engaged in discovery. In July 2018, plaintiffs served their First Request for Production of Documents on Mane, seeking information about Mane's knowledge of the health hazards associated with diacetyl exposure and the necessary measures Mane took to protect those employees who handled diacetyl. Among other things, plaintiffs requested the following:

> Plaintiffs' First Request No. 6: Any DOCUMENTS that contain any warning language, including but not limited to warnings regarding the potential hazards, PERTAINING to DIACETYL * * * including but not limited to: a) material safety data sheets, b) safety data sheets, c) container labels, d) instructions for use,

- 3 -

[and] e) correspondence.

Plaintiffs' First Request No. 7: Any DOCUMENTS PERTAINING to how DIACETYL * * * was to be handled by employees during the TERM OF EMPLOYMENT, including but not limited to: a) Hazard Communication DOCUMENTS, b) training sessions slides or presentations, [and] c) sign-in sheets.

Plaintiffs' First Request No. 9: Any DOCUMENTS PERTAINING to any air sampling or industrial hygiene reports (including insurance audits or inspections) done at the FACILITY at any time by an INDIVIDUAL or PERSON.

{¶6} Mane responded with various objections, but also indicated it had already produced documents responsive to the requests. Specifically, Mane responded as follows to plaintiffs' First Request for Production Nos. 6, 7, and 9:

Mane's Response to Plaintiffs' First Request No. 6: Mane objects to this Request because it is vague, ambiguous, overbroad and unduly burdensome, and because it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Mane refers to documents produced by Mane at MANE 000974-MANE 002039, MANE 002292-MANE 003953. Mane reserves the right to supplement this response.

Mane's Response to Plaintiffs' First Request No. 7: Mane objects to this Request because it is vague, ambiguous, overbroad and unduly burdensome, and because it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Mane refers to documents produced by Mane at MANE 000974-MANE 002039, MANE 002292-MANE 003953. Mane reserves the right to supplement this response.

Mane's Response to Plaintiffs' First Request No. 9: Mane objects to this Request because it is vague, ambiguous, overbroad and unduly burdensome, and because it seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Mane refers to documents produced by Mane at MANE002232-Mane 002258.

{¶7} OLI likewise sought discovery from Mane. OLI sought information pertaining

- 4 -

to Mane's knowledge of the hazards of diacetyl, knowledge as to when and how Mane gained such knowledge, and when and how Mane disseminated said knowledge and information to its employees at *any* of its facilities where flavorings containing diacetyl were used, including the Lebanon facility. On February 10, 2020, OLI served its First Set of Requests for Production of Documents on Mane. OLI requested that Mane produce, among other things, the following:

> OLI's First Request No. 1: All correspondence * * * between any Mane employees, about risks associated with diacetyl * * * or any flavoring containing diacetyl * * * from January 1, 2011 to the present.
>
> OLI's First Request No. 3: All correspondence * * * between any Mane employees, about the use of, or need for, respiratory protective equipment of any kind for employees working with diacetyl * * * or any flavoring containing diacetyl * * * from January 1, 2011 to the present.
>
> OLI's First Request No. 4: All documents of any kind relating to Mane's policies or procedures, whether or not in writing, with respect to the use of respiratory protective equipment of any kind for employees working with diacetyl * * * or any flavoring containing diacetyl * * * from January 1, 2011 to the present.

{¶8} Mane responded with various objections, but also indicated it had already produced documents responsive to the requests. Specifically, Mane responded as follows to OLI's Requests for Production Nos. 1, 3, and 4:

> Mane's Response to OLI's First Request No. 1: Mane objects that this request is overly broad, unduly burdensome and seeks irrelevant information, as only correspondence related to the alleged risks associated with diacetyl * * * in the specific areas in which Plaintiffs worked is relevant here. Mane also objects to this request to the extent it implies that there are risks associated with the quantities of diacetyl * * * to which Plaintiffs were allegedly exposed in the course of their employment at Mane. *Subject to and without waiving these objections or the general objections, Mane states that it has already produced documents concerning the alleged risks associated with diacetyl * * * including but not limited to MANE002292-2560, 2773-3039. Mane also refers to the documents being produced with these responses.*

Mane's Response to OLI's First Request No. 3: Mane objects that this request is overly broad, unduly burdensome and seeks irrelevant information, as only the correspondence related to the use of respiratory equipment in the specific areas in which Plaintiffs worked is relevant here. Mane also objects to this request to the extent it implies that respiratory protective equipment is always required when working with flavorings containing diacetyl * * * regardless of the quantity or concentration of diacetyl[.] Subject to and without waiving these objections or the general objections, Mane states that it relies on, and complies with the applicable governmental regulations and promulgations that relate to the use, or need for, respiratory protective equipment with its flavorings. *Further, Mane states that it has already produced its documents concerning the use of and need for respiratory protection – including but not limited to MANE002292-3433 and the MSDS and SDS it has produced in this litigation. Mane also refers to the documents being produced with these responses.*

Mane's Response to OLI's First Request No. 4: Mane objects that this request is overly broad, unduly burdensome and seeks irrelevant information, as only the policies or procedures related to the use of respiratory equipment in the specific areas in which Plaintiffs worked are relevant here. Mane also objects to this request to the extent it implies that respiratory protective equipment is always required when working with flavorings containing diacetyl * * * regardless of the quantity or concentration of diacetyl[.] Subject to and without waiving these objections or the general objections, Mane states that it relies on, and complies with the applicable governmental regulations and promulgations that relate to the use, or need for, respiratory protective equipment with its flavorings. *Mane also states that it has already produced documents responsive to this request including but not limited to MANE002292-3433 and the MSDS and SDS it has produced in this litigation. Mane also refers to the documents being produced with these responses.*

(Emphasis added.)

{¶9} On July 6, 2020, OLI served a second set of requests for production of documents on Mane requesting, among other things, the following:

OLI's Second Request No. 6: Any documents showing when and how Mane first learned about any potential health hazards associated with exposure to diacetyl, including but not limited to alleged respiratory conditions or health effects associated with exposure to diacetyl.

- 6 -

Mane provided the following response to the request:

> Mane's Response to OLI's Second Request No. 6: Mane objects that this request is improperly compound overly broad, and unduly burdensome. * * * The request also improperly calls for scientific and/or medical expert opinion. Mane objects to this request because it seeks irrelevant information, as only Mane's knowledge related to any alleged risks associated with diacetyl and its own manufacturing processes is relevant here. Mane also objects to this request to the extent that it implies that the plaintiffs ever handled or encountered raw diacetyl or that there is a casual link between exposure to diacetyl and respiratory conditions or other health effects. *Subject to and without waiving these objections, Mane states it has already produced the FEMA publications and MSDS that are responsive to this request.*

(Emphasis added.)

{¶10} In addition to serving discovery requests on Mane, plaintiffs and OLI also took the deposition of Mane's corporate representative, Jordan Pearman. Pearman was deposed in October 2018, March 2020, and May 2020. OLI's Notice of 30(B)(5) Deposition for Pearman indicated that OLI was interested in the topic of Mane's "knowledge of the alleged hazards of diacetyl * * * and/or any flavorings or flavor containing diacetyl * * * including when and how it became aware of such alleged hazards." Though no formal objections were filed by Mane to the topics for deposition, counsel for Mane sought to limit OLI's questioning to Mane's knowledge of hazards relating only to the Lebanon facility where the plaintiffs worked.

{¶11} During the course of Pearman's deposition, it became apparent that in 2015, Mane made numerous changes at the Lebanon facility pertaining to the handling of diacetyl and formulations containing diacetyl. Pearman explained that the changes Mane made were done for three reasons: (1) as part of the corporation's continuous desire to protect its employees, (2) due to the nationwide rollout of the Global Harmonized System, a program requiring graphic representation of chemical hazards to employees, and (3) a new

safety manager had recommended the changes. When OLI's counsel sought to question Pearman about how raw diacetyl was handled at Mane facilities other than the Lebanon facility, Mane's counsel limited Pearman to testifying about employees wearing respirators when handling raw diacetyl. Mane's counsel instructed Pearman not to answer any further questions about processes at facilities other than the Lebanon facility.

{¶12} Mane's Environmental Health and Safety specialist, Todd Valli, was deposed in August 2020. Valli indicated he first learned about the potential hazards of diacetyl in approximately 2014. However, he indicated that his predecessor, Jennifer Bokovoy, knew of the potential hazards of diacetyl before that due to her involvement in the development of diacetyl-handling controls at another one of Mane's facilities—the Milford facility. OLI found Valli's deposition to be troublesome, as Mane had not produced any documents regarding diacetyl-handling controls at any of its facilities prior to 2014 and had not produced documents regarding Bokovoy's involvement in that process. OLI sought to obtain information via a Freedom of Information Act ("FOIA") request served on the federal Occupational Safety and Health Administration ("OSHA").

{¶13} OSHA provided responsive documents on December 9, 2020 and January 5, 2021. The documents discussed citations that OSHA had imposed on Mane following an inspection of Mane's Milford facility in 2011. The citations were centered on Mane's failure to provide records about diacetyl exposure to a Mane employee who worked as a flavoring compounder and its failure to provide the employee with appropriate hazard communication training on diacetyl. OSHA's responses also showed that Mane had been notified by OSHA in February 2013, in connection with a 2012 inspection of Mane's Milford facility, that one of its flavoring-compounder employees had been overexposed to diacetyl despite wearing respiratory protection. Mane was cited after testing showed that during one 15-minute period, diacetyl levels were as high as 1,800 parts per billion, which exceeded the maximum

use concentration for the type of respirator the employee had been provided.

**{¶14}** After receiving the OSHA reports, OLI sought to depose a Mane employee pursuant to Civ.R. 30(B)(5) about the OSHA reports and about what Mane knew about potential diacetyl hazards and when and how it knew of the hazards. Counsel for Mane initially declined to produce a witness. While Mane and OLI attempted to work out this discovery issue, plaintiffs became aware of the OSHA citations issued to Mane. In response, plaintiffs filed new discovery requests on Mane on December 23, 2020. Then, on January 13, 2021, plaintiffs filed a motion for sanctions against Mane based on Mane's failure to produce any information relating to the OSHA investigations and resulting citations in response to the original discovery requests served on Mane. A hearing was scheduled for January 21, 2021 to resolve the parties' discovery disputes. The evening before the hearing, at 10:17 p.m., Mane produced over 2,700 pages of new documents in response to plaintiffs' December 2020 discovery requests.

**{¶15}** The newly produced documents reflected that Mane was fined and cited by OSHA multiple times leading up to 2015 when Mane began making changes to its handling of diacetyl. The documents reflected that air samplings and exposure assessments from 2009, 2010, 2012, 2014, and 2015 indicated exposure was imminent, rather than merely potential, that Mane overexposed its employees to diacetyl, that Mane was concerned with media reports about diacetyl exposure, and that Mane had been in communication with its insurance adjusters about the OSHA citations.

**{¶16}** The records also disclosed that Mane was aware of the 5 parts per billion recommended exposure limit for diacetyl by December 2013, based upon an internal email Bokovoy had sent to Valli and the OSHA citations. This was of particular concern to plaintiffs, as plaintiffs had engaged an expert, Dr. Adam M. Finkel, who had produced a report expressing the opinion that OLI bore liability in part for failing to warn Mane of what

- 9 -

it knew regarding the hazards of diacetyl, including the occupational exposure limits and that diacetyl carried a recommended exposure limit. A central premise of Dr. Finkle's opinion was that Mane was unaware of the 5 parts per billion recommended exposure limit.

{¶17} Prior to its January 20, 2021 document production, Mane had provided in discovery only a single air sampling/industrial hygiene report. That report was prepared in June 2015 by Thomas Morris ("the Morris Report"). The Morris Report included information on the level of airborne diacetyl in one of the rooms where plaintiffs worked in at the Lebanon facility. Plaintiffs' and OLI's experts believed the Morris Report was the only evidence of the level of airborne diacetyl to which plaintiffs had been exposed. Pearman, Mane's representative, had stated in his May 2020 deposition that other than the Morris Report, he was unaware of any other diacetyl study conducted by Mane or by a third party on behalf of Mane. The Morris Report concluded that the levels of airborne diacetyl were insufficient to cause lung disease in humans. However, the documents produced by Mane in its January 20, 2021 document production contained multiple air sampling and industrial hygiene reports. Some of these reports indicated exposure to airborne levels of diacetyl in parts of the Lebanon plant where plaintiffs worked was as high as 13,000 parts per billion—more than 260 times the exposure levels documented in the Morris Report.

{¶18} On February 2, 2021, Mane supplemented its initial responses to OLI's First Set for Production of Documents to reference the documents it produced on January 20, 2021. Thereafter, on February 10, 2021, OLI filed a combined motion to compel and motion for sanctions against Mane. OLI argued that "Mane withheld documents it knew were relevant to [OLI's] affirmative defenses while at the same time leading [OLI] to believe that it had produced all responsive documents in discovery." Referencing the documents it obtained from OSHA and the 2,700 pages OLI produced on January 20, 2021, OLI argued that the documents were lately produced and that they "show[ed] that the testimony of

Mane's corporate representative so far was at best incomplete and at worst inaccurate." OLI contended Mane's actions had prevented discovery on the issue of Mane's knowledge of diacetyl hazards and led to a waste of resources and time by the parties and their experts. OLI sought an order to compel Mane to produce a witness to testify about Mane's knowledge of the hazards of diacetyl and sought attorney fees, costs, and sanctions related to retaking Mane's deposition and having expert reports updated given the new information.

{¶19} That same date, February 10, 2021, Plaintiffs filed against Mane a supplemental motion for sanctions under Civ.R. 37(C), contending that Mane "willfully and intentionally withheld thousands of pages of responsive documents * * *, [i]ntentionally gave false testimony in its deposition * * *, [k]nowingly verified false and misleading discovery in order to unjustly booster its defenses, and [f]ailed to correct or supplement discovery responses it knew to be inaccurate." Plaintiffs argued the OSHA documents and the documents Mane turned over on January 20, 2021 should have been turned over more than a year beforehand, as they were responsive to their First Request for Production of Documents Nos. 6, 7, and 9. Plaintiffs asked that Mane's Answer to its complaint be stricken and that the court "direct that Mane's intent to injure the Plaintiffs * * * be taken as an established fact for the purpose of the action, prohibit Mane from supporting or opposing claims or defenses that Mane intended to injure the Plaintiffs, order Mane to pay all costs and attorney fees incurred by Plaintiffs as a result of Mane's conduct, and grant such further relief as is proper."

{¶20} Mane opposed OLI's and plaintiffs' respective motions for sanctions. Mane argued that all parties were aware and were in agreement that discovery would be limited in scope to the products, hazards, and warnings in and at the microcaps extruder department at the Lebanon facility and that it had appropriately responded to discovery requests served on it by OLI and plaintiffs. A hearing on plaintiffs' and OLI's motions was

held on March 4, 2021. Subsequently, on March 24, 2021, the trial court granted OLI's combined motion to compel and motion for sanctions against Mane and granted in part Plaintiffs' motion for sanctions against Mane. The court found that Mane's failure to timely supplement its initial discovery responses pursuant to Civ.R. 26(E) was actionable under Civ.R. 37(C). It further found that the 2,700 documents produced on January 20, 2021 were

> responsive in part to Plaintiffs' * * * first request for production of documents * * * and OLI's first and second requests for production of documents. Additionally, a former employee of Mane testified that these documents were turned over to [Mane's] counsel a few years ago. * * * While this is certainly not the complete list of discovery requests these documents were responsive to, it is sufficient to entitle the plaintiffs and OLI to sanctions under Civ.R. 37.

{¶21} The court discussed the history of the case, noting that the case had been pending for more than three years and was set to go to trial within six months, a timeline that was no longer realistic given Mane's failure to timely turn over relevant documents. The court noted:

> Depositions have been conducted. Expert reports have been prepared and exchanged. While all this work was being done, Mane was in possession of documents that [were] relevant, discoverable and the subject [of] prior discovery requests. Mane also knew or should have known that the disclosure of these documents was necessary to reasonably supplement and/or correct prior responses.

> It is apparent that Mane has an overly narrow view of the scope of the case that is not shared by the Plaintiffs and OLI. Likewise, the testimony of the corporate representative of Mane is highly selective and, at times, suspect.

> Mane's objections do not sufficiently place other parties on notice that there may be documents in Mane's possession that it is unwilling to produce, nor do the objections make clear that Mane is not even going to undertake to look for them because of the hyper-technical and overly legalistic nature of the response. Mane's behavior in this case is not outright dishonest, but a dishonest motive is not required for sanctions to be imposed.

{¶22} The court concluded that "[t]he withholding of the discovery in this case [was] not substantially justified and the additional time, expense, and delay as a result are highly prejudicial to the plaintiffs and OLI." The court therefore ordered that Mane (1) pay for reasonable attorney fees, expenses and costs of plaintiffs and OLI associated with the March 4, 2021 hearing, (2) pay for reasonable attorney fees, expenses and costs associated with the additional depositions or redepositions resulting from the failure to turn over the relevant documents, including but not limited to Valli, Bokovoy, Melanie Buck, Ashley Bishop, and Mane, (3) produce a corporate representative to testify on issues raised by plaintiffs and OLI, and (4) pay for reasonable fees, expenses and costs associated with all depositions, and supplemental expert reports that are reasonably necessary and substantially related to Mane's withholding of discoverable evidence.

{¶23} To arrive at the amount of fees, expenses, and costs Mane was responsible for, the court ordered the parties to submit a "written motion with supporting affidavits and/or documentation" so that it could "issue a decision as to whether the expenditure was reasonably necessary and substantially related to the withholding of discoverable evidence and whether the fees, expenses and costs are reasonable." After OLI and plaintiffs filed their motions and supporting documentation, Mane filed a memorandum in opposition to the amount of fees and costs requested.

{¶24} On August 18, 2021, the trial court issued an "Entry on Granting Motion for Fees and Costs," in which the trial court indicated it was granting court costs, reasonable attorney fees and other reasonable expenses to OLI and plaintiffs pursuant to R.C. 2323.51(B)(1), as a result Mane's frivolous conduct. The court ordered Mane to pay OLI's attorney fees in the amount of $66,207 and costs in the amount of $9,305.21 and pay plaintiffs' attorney fees in the amount of $96,058.50 and costs in the amount of $3,008.64.

{¶25} Mane appealed the trial court's award of fees and costs. However, this court

dismissed the appeal as we lacked a final appealable order. *See Mundy v. Centrome*, 12th Dist. Warren No. CA2021-09-086 (Jan. 6, 2022) (Entry Granting Motion to Dismiss Appeal). On remand, the trial court ordered the payment of costs and fees by a date certain, April 2, 2022. Mane once again appealed, raising seven assignments of error for our review. We find our resolution of the first assignment of error is dispositive of the appeal, and moot the remaining assignments of error.

## II. ANALYSIS

{¶26} Assignment of Error No. 1:

{¶27} THE COURT ERRED IN AWARDING R.C. 2323.51 SANCTIONS WITHOUT NOTICE OR HEARING.

{¶28} In its first assignment of error, Mane argues the trial court erred by awarding attorney fees, expenses, and costs pursuant to the frivolous conduct statute, R.C 2323.51, in its August 18, 2021 entry. Mane argues that the parties had not moved for sanctions under R.C. 2323.51 and it had not received notice that frivolous conduct sanctions would be considered until the August 18, 2021 entry was issued, thereby violating the notice and hearing requirements of the statute. In response, plaintiffs and OLI argue that the trial court had discretion to impose attorney fees and costs pursuant to R.C. 2323.51 and that the hearing that was held on the Civ.R. 37 motion for sanctions was sufficient to award Mane due process. Alternatively, OLI and plaintiffs argue the trial court's August 18, 2021 entry imposing sanctions under R.C. 2323.51 rather than Civ.R. 37 was merely a mistake of phrase by the trial court. They contend that the court had previously "made clear in its March 22, 2021 order that it was sanctioning Mane under Civ.R. 37(C)" and the award of attorney fees and costs set forth in the August 18, 2021 entry should be treated as the imposition of sanctions imposed pursuant to the court's finding of discovery violations under Civ.R. 37.

{¶29} Both R.C. 2323.51 and Civ.R. 37 allow for sanctions against a party. R.C. 2323.51 allows for sanctions where a party has engaged in frivolous conduct. As defined by R.C. 2323.51(A)(2)(a), frivolous conduct includes the following:

> It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

> It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

> The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

> The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

{¶30} Pursuant to R.C. 2323.51(B)(1), a party in a civil action who claims to have been adversely affected by "frivolous conduct" may move the court for an award of court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the action. Alternatively, a trial court may impose sanctions for frivolous conduct on its own initiative. R.C. 2323.51(B)(2); *See also Baker v. USS/Kobe Steel Co.*, 9th Dist. Lorain No. 98CA007151, 2000 Ohio App. LEXIS 6, *4 (Jan. 5, 2000). "However, the statute permits the court to impose sanctions only after it provides notice to the parties that a hearing will be held on the issue of frivolous conduct." *Id.* at *5, citing R.C. 2323.51(B)(2)(a) and (b).

{¶31} Section (B)(2) of the statute sets forth the procedural requirements that must be followed if a party moves for sanctions on the basis of frivolous conduct or if the court wishes to consider the issue on its own initiative. Pursuant to R.C. 2323.51(B)(2), a trial court can award court costs, reasonable attorney fees, and other reasonable expenses for

frivolous conduct only after the court does all of the following:

> (a) Sets a date for a hearing to be conducted in accordance with division (B)(2)(c) of this section, to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award;
>
> (b) Gives notice of the date of the hearing described in division (B)(2)(a) of this section to each party or counsel of record who allegedly engaged in frivolous conduct and to each party who allegedly was adversely affected by frivolous conduct;
>
> (c) Conducts the hearing described in division (B)(2)(a) of this section in accordance with this division, allows the parties and counsel of record involved to present any relevant evidence at the hearing, including evidence of the type described in division (B)(5) of this section, determines that the conduct involved was frivolous and that a party was adversely affected by it, and then determines the amount of the award to be made.  * * *

**{¶32}** Conversely, "Civ.R. 37 provides a mechanism by which discovery rules can be enforced." *Rardin v. Salon Professional Academy, LLC*, 6th Dist. Wood No. WD-16-011, 2017-Ohio-410, ¶ 17.  "[F]rivolous conduct is not a condition precedent to the imposition of sanctions under Civ.R. 37." *Id.* at ¶ 20.  Rather, "[t]he [civil] rule specifically authorizes a trial court to make 'just' orders in response to discovery violations, including the imposition of sanctions for failure to comply with discovery orders." *Id.* at ¶ 17.  Civ.R. 37(C) in particular provides for sanctions when a party fails to comply with discovery by neglecting to supplement an earlier response or failing to admit what is requested under Civ.R. 36.  As relevant to the present appeal, Civ.R. 37(C) provides as follows:

> (1) Failure to supplement.  If a party fails to provide information or identify a witness as required by Civ.R. 26(E), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (a) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(b) may inform the jury of the party's failure; and

(c) may impose other appropriate sanctions, including any of the orders listed in Civ.R. 37(B)(1)(a) through (f).

{¶33} The record in the present case indicates that OLI's and plaintiffs' respective motions for sanctions were filed under Civ.R. 37. Nowhere in their respective motions or at the March 4, 2021 hearing on the motions did OLI or plaintiffs mention sanctions for frivolous conduct or cite to R.C. 2323.51. Similarly, nowhere in the record does the trial court provide notice to the parties that it was sua sponte considering the issue of frivolous conduct or that the March 4, 2021 hearing was intended to address the issue of frivolous conduct in addition to the Civ.R. 37 discovery violations. "While the trial court may consider R.C. 2323.51 sanctions on its own initiative, notice is still required to allow the party threatened with sanctions the opportunity to prepare a factual and legal defense." *Baker*, 2000 Ohio App. LEXIS 6 at *5. Here, Mane was not on notice that it needed to defend against claims of frivolous conduct at the March 4, 2021 hearing. As the trial court failed to give adequate notice to Mane, and the other parties, that it was sua sponte considering the issue of frivolous conduct at the March 4, 2021 hearing, we find that the award of attorney fees and costs under R.C. 2323.51(B)(1) constitutes reversible error.

{¶34} OLI and plaintiffs argue that this court should review the court's August 18, 2021 imposition of attorney fees and costs as sanctions being imposed pursuant to the finding of Civ.R. 37(C) discovery violations, contending it was merely a "mistake of phrase" when the court referenced the frivolous conduct statute. However, the trial court's repeated reference to R.C. 2323.51 and its citation to case law discussing frivolous conduct sanctions clearly indicates the trial court's intent to award fees under the frivolous conduct statute— and not under Civ.R. 37, which was never referenced in the court's August 18, 2021 entry. As the expressed legal basis for the court's sanctions award was R.C. 2323.51, we are not

- 17 -

persuaded by OLI's and plaintiffs' "mistake of phrase" argument.

**{¶35}** Additionally, while the trial court's March 22, 2021 Entry and Decision on Discovery Motions unquestionably found that sanctions were appropriate under Civ.R. 37, that entry did not determine the amount of sanctions to be imposed. Rather, it ordered the parties to submit affidavits and documentation showing the amount of fees, expenses, and costs that were being sought. The court indicated it would review the motions and issue a subsequent decision. However, the trial court never issued an opinion imposing sanctions for the Civ.R. 37(C) discovery violation. Instead, it issued sanctions under R.C. 2323.51 for frivolous conduct. It is well settled that "a court speaks only through its journal entries." *Infinite Sec. Solutions, L.L.C. v. Karam Properties II, Ltd.*, 143 Ohio St.3d 346, 2015-Ohio-1101, ¶ 29. As there was no journal entry imposing sanctions under Civ.R. 37, only an order contemplating further action upon a finding that Civ.R. 37(C) had been violated, there is no final appealable order for this court to review with respect to OLI's and plaintiffs' respective motions for sanctions under Civ.R. 37(C). *See State ex rel. Bd. of State Teachers Retirement Sys. of Ohio v. Davis*, 113 Ohio St.3d 410, 2007-Ohio-2205, ¶ 45 ("A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order").

### III. CONCLUSION

**{¶36}** As the trial court failed to comply with the requirements of R.C. 2323.51, we find that the trial court erred in awarding attorney fees, expenses, and costs for frivolous conduct in its August 18, 2021 entry. Mane's first assignment of error is sustained and the August 18, 2021 Entry on Granting Motion for Fees and Costs under R.C. 2323.51, and the subsequent March 24, 2022 Entry and Order Lifting Stay and Ordering Payment of Fees and Costs by a date certain, are hereby reversed. The matter is remanded for the trial court to comply with the requirements of R.C. 2323.51 in considering sanctions for frivolous

conduct or if the trial court desires to award sanctions for the Civ.R. 37(C) violations, to issue a final appealable order accordingly.

**{¶37}** Given our resolution of Mane's first assignment of error, Mane's six remaining assignments of error, all of which challenge the award of sanctions under R.C. 2323.51 or the finding of discovery violations under Civ.R. 37(C), are rendered moot.

**{¶38}** Judgment reversed and the matter remanded for further proceedings.

M. POWELL, P.J., and BYRNE, J., concur.