[Cite as *Legacy Real Estate Investing, L.L.C. v. Maldonado Constr., L.L.C.*, 2026-Ohio-953.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| LEGACY REAL ESTATE INVESTING, LLC | : | C.A. No. 2025-CA-34 |
| | : | |
| Appellee | : | Trial Court Case No. 23 CV 497 |
| | : | |
| v. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| MALDONADO CONSTRUCTION, LLC | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellant | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 20, 2026, the judgment of the trial court is reversed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and TUCKER, J., concur.

**OPINION**

THOMAS M. KOLLIN, Attorney for Appellant
ROBERT J. HUFFMAN, Attorney for Appellee

EPLEY, J.

{¶ 1} Douglas Maldonado and his attorney, Thomas Kollin, appeal from a judgment of the Miami County Court of Common Pleas, which ordered them to pay $600 in attorney fees to Legacy Real Estate Investing, LLC for frivolously requesting an interpreter. For the following reasons, the trial court's judgment is reversed.

## I. Facts and Procedural History

{¶ 2} Legacy hired Maldonado and his company to perform home remodeling and construction work on one of its residential properties. When Maldonado allegedly failed to complete the work, Legacy sued for breach of contract as well as slander of title due to Maldonado's placement of a mechanic's lien on the property. Maldonado counterclaimed. Under the trial court's scheduling order, discovery was to be completed by January 31, 2025, and a bench trial was set for May 14, 2025. Maldonado was deposed without the aid of a Spanish-language interpreter during the discovery period.

{¶ 3} At the final pretrial conference on April 23, 2025, Kollin and the court discussed Maldonado's potential use of a Spanish-language interpreter at trial. The record does not contain a transcript of the conference, and it is unclear whether Legacy objected to the use of an interpreter then. *See* Tr. (Day 2) 4. No written motion for an interpreter was filed between the final pretrial conference and the trial.

{¶ 4} According to Kollin, on the morning of trial, he arrived with an interpreter from Miami Valley Interpreters, and she sat in the lobby of the courthouse. He went into the

2

judge's chambers, where he was asked if the interpreter was Ohio Supreme Court certified. Kollin went to the interpreter, got her business card, and learned that she was not. Kollin then provided the business card to court staff, who confirmed with Miami Valley Interpreters that she was not certified by the Ohio Supreme Court. The court told Kollin that the interpreter was not allowed to assist them. Tr. (Day 2) 32.

{¶ 5} When the court proceedings began, the court asked Kollin if he still wished to pursue the appointment of an interpreter. Kollin responded affirmatively. He told the court that he had contacted the individual that the court typically uses, but that individual did not do civil trials. Another interpreter was contacted, and he asked the court to appoint that individual, who was waiting in the lobby, as the formal interpreter.

{¶ 6} Legacy's counsel objected to the appointment of an interpreter on two grounds. First, he argued that he had prepared for trial with the assumption that there would not be an interpreter. He explained that he had scheduled experts in the construction field who had changed their schedules to be there and that the use of an interpreter would extend a two-day trial into a four- to five-day trial. Second, he asserted that there was no need for an interpreter. He stated that Maldonado had lived in the United States for 26 or so years, that he had not requested an interpreter for his deposition, and that he had not displayed any inability to understand or give logical answers.

{¶ 7} The court conducted a voir dire of Maldonado regarding his proficiency with the English language. Counsel for both parties also were permitted to ask him questions. After a brief recess to consider the matter, the trial court overruled Maldonado's request for an interpreter. The court indicated that it had reviewed the Rules of Superintendence for the Courts of Ohio and had taken judicial notice of Maldonado's deposition testimony, which previously had been filed.

3

{¶ 8} At Kollin's request and over Legacy's counsel's objection, the trial court permitted Maldonado to have his interpreter seated with him at his table. When Kollin went to get her from the hallway, however, he discovered that someone had told her that she could go and she had left.

{¶ 9} The bench trial proceeded without an interpreter, beginning with Maldonado as Legacy's first witness. The first day ended with a discussion about the order that witnesses would be presented on the following day.

{¶ 10} Before testimony began on the second day of trial, the court stated that it wanted to revisit Kollin's "untimely motion for an interpreter and his subsequent objection to the court's voir dire of [Maldonado]." (We can find no objection to the voir dire in the trial transcript for May 14, 2025. It is unclear when, if at all, Kollin objected to the voir dire.) The court indicated that it was concerned that the motion for an interpreter made on the morning of trial "was not made in good faith, but rather was for a delay tactic." It also expressed concern that Kollin's objection to the voir dire of Maldonado "similarly [was] an attempt to invite an appealable issue and to add to the expense of this litigation." The court gave Kollin an opportunity "to either withdraw your objection to the court's voir dire of the Defendant regarding whether it was necessary for an interpreter and your motion for the interpreter, or we're going to get an interpreter on the phone today and I'm going to re-voir dire the defendant right here."

{¶ 11} Kollin declined to withdraw his motion and argued that his request for an interpreter was made in good faith as Maldonado "doesn't understand the concepts." He also took the opportunity to "clear the record" regarding the interpreter. He again indicated that an interpreter had been discussed at the final pretrial conference, and he had an email from court staff on whom to contact. The email included a reference to Miami Valley

4

Interpreters, and after the court's recommended interpreter said that she would not do a civil case, Kollin's contact called them. Kollin stated that she had come to the courthouse, "but she was not certified as a translator so it's my understanding the court ruled she was not allowed to come in and be that interpreter because she was not certified. She was also only allowed to do two hours. . . [A]t that point, we decided to voir dire whether the interpreter was actually needed." Tr. (Day 2) 3-4.

{¶ 12} The court took a brief recess to telephone the Supreme Court Interpreter Info Line, and with the assistance of a Spanish-language interpreter on the phone, proceeded to conduct another voir dire of Maldonado, asking similar questions to the prior voir dire. Again, the court allowed the parties to ask follow-up questions. Most of Maldonado's answers were the same. However, he stated that he had not taken any English classes in the United States and emphasized the difficulties he sometimes has understanding written and spoken English. After hearing arguments from the parties, the trial court again concluded that Maldonado was proficient in the English language and that an interpreter was not necessary.

{¶ 13} After hearing from Kollin as to why he had acted in good faith, the trial court found that Maldonado had not done so when he asked for an interpreter "at such a late date," that he did not use the proper procedure to request an interpreter, and that the request was a delay tactic. The court further found that the delay amounted to approximately two hours of court time, as well as the attorney's time, and affected Legacy's calling of its witnesses. The court concluded that sanctions were appropriate. The court asked Legacy's counsel what his regular rate was, to which he responded $300 per hour. Kollin agreed that the rate was reasonable. The court imposed a sanction of $600 to be paid within 24 hours to opposing counsel.

5

{¶ 14} Later that afternoon, Kollin memorialized on the record that the court and attorneys had agreed that the court would wait 21 days before issuing a written decision regarding the sanctions and that Legacy's counsel would be paid within 72 hours of that decision. Legacy's counsel confirmed that he agreed with the extensions. Tr. (Day 2) 167-169. The second day of testimony concluded, and additional trial dates were scheduled for August 20 and 21, 2025. Ultimately, the parties reached a settlement and voluntarily dismissed the action with prejudice in September 2025.

{¶ 15} On August 12, 2025, prior to the planned resumption of the trial, the trial court issued its written decision denying Maldonado's request for an interpreter and awarding attorney fees to Legacy for frivolous conduct, making findings similar to its oral pronouncement. The court ordered Maldonado and Kollin, jointly and severally, to pay attorney fees of $600 to Legacy's counsel within 24 hours.

{¶ 16} The next day, Kollin appealed the trial court's ruling on Maldonado's behalf. Kollin did not separately appeal the sanctions decision, but we consider him to be an appellant in his individual capacity. *See Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 665 (1994). By separate motions, Maldonado asked both the trial court and us to stay the trial court's judgment. The trial court denied the motion. However, we granted the motion, conditioned on the posting of a $600 bond, which has been done.

{¶ 17} We further asked the parties to show cause why the appeal should not be limited to a review of the sanctions decision. In his response, Maldonado agreed that the portion of the trial court's judgment denying his request for an interpreter was now moot. Accordingly, we limited this appeal to the sanctions ruling only.

{¶ 18} Maldonado now raises one assignment of error, claiming that the trial court erred and abused its discretion in awarding attorney fees to Legacy as a sanction for

6

requesting a foreign language interpreter. He argues that he meets Sup.R. 80(F)'s definition of "limited English proficient," that a request for a foreign language interpreter is authorized by Sup.R. 88, and that a request for such an accommodation should not constitute frivolous conduct. Legacy has not filed a responsive appellate brief.

## II. Relevant Legal Standards for Sanctions under R.C. 2323.51

{¶ 19} R.C. 2323.51 allows for sanctions where a party has engaged in frivolous conduct. *Martin v. Becker*, 2025-Ohio-2356, ¶ 40 (2d Dist.). Frivolous conduct includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation." R.C. 2323.51(A)(2)(a)(i). It also includes conduct that is "not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii).

{¶ 20} R.C. 2323.51 "was not intended to punish mere misjudgment or tactical error. Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action." (Citations omitted.) *Hickman v. Murray*, 1996 WL 125916, * 5 (2d Dist. Mar. 22, 1996).

{¶ 21} A court may award "court costs, reasonable attorney's fees, and other reasonable expenses" to any party "who was adversely affected by frivolous conduct." R.C. 2323.51(B)(1). Before making an award, the court must hold a hearing to determine (1) whether particular conduct was frivolous, (2) whether any party was adversely affected by it, and (3) if an award is to be made, the amount of that award. R.C. 2323.51(B)(2)(a); *Hamlin v. Bosse*, 2018-Ohio-2657, ¶ 12 (2d Dist.).

7

{¶ 22} We review the trial court's decision on whether to award sanctions under R.C. 2323.51(A)(2)(a)(i) for an abuse of discretion. *Hamlin* at ¶ 11, citing *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*, 2014-Ohio-1564, ¶ 10. *See also Stremmel v. Demmery*, 2017-Ohio-5500, ¶ 21 (2d Dist.) (the abuse of discretion standard applies for sanctions under R.C. 2323.51(A)(2)(a)(i), (iii), and (iv)). An abuse of discretion occurs when the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). We review de novo the trial court's legal conclusions related to sanctions under R.C. 2323.51(A)(2)(a)(ii). *Stremmel* at ¶ 21.

{¶ 23} In one portion of his appellate brief, Maldonado claims that the trial court imposed sanctions under both R.C. 2323.51(A)(2)(a)(i) and R.C. 2323.51(A)(2)(a)(ii), and therefore, both the de novo and abuse of discretion standards apply. He states that the "central legal question here is whether requesting an interpreter authorized by Sup.R. 88 can constitute conduct 'not authorized under existing law,'" which is reviewed de novo. He acknowledges that the abuse of discretion standard applies to the court's findings regarding his intent to delay.

{¶ 24} Contrary to Maldonado's initial assertion, the trial court's decision was expressly based on R.C. 2323.51(A)(2)(a)(i) alone, a fact that he recognizes in another portion of his brief. The court found in its written decision that "[t]he untimeliness of Defendant's motion, Defendant's failure to make a formal written motion before the Court prior to trial, Defendant's knowledge of the trial date for nearly one year prior to its commencement, and Defendant's clear mastery of the English language reveal that Defendant's oral motion for a Spanish-speaking interpreter on the morning of trial was frivolous, a delay tactic, and made in bad faith." Because the trial court's award of sanctions was based on its determination that Maldonado's conduct had caused unnecessary delay,

8

the focus of our review is whether the trial court abused its discretion in making its factual findings.

### III. Review of Trial Court's Findings

{¶ 25} Maldonado contends that the trial court abused its discretion in imposing sanctions because the motion was timely and he met the standard for a "limited English proficient" individual. He thus claims that his motion was appropriate and his conduct was not sanctionable.

{¶ 26} R.C. 2311.14(A)(1) provides that "[w]henever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person." Under Sup.R. 88(A)(1), a trial court must appoint a foreign language interpreter in a case or court function when "[a] party or witness who is limited English proficient or non-English speaking requests a foreign language interpreter and the court determines the services of the interpreter are necessary for the meaningful participation of the party or witness."

{¶ 27} The phrase "limited English proficient" means "an individual who does not speak English as a primary language or who has a limited ability to read, speak, write, or understand English and requires the assistance of a foreign language interpreter or sign language interpreter to effectively communicate." Sup.R. 80(F).

{¶ 28} During the court's voir dire on the first day of trial, Maldonado testified that he was from a town in Mexico that is approximately eight hours from Brownsville, Texas, that his first language was Spanish, and that he had received college education for mechanical and electrical engineering there. Maldonado stated that he had lived in the United States for 28 years, he had been married for 27 years, and he was a United States citizen; he provided his current address. He and his wife met at a restaurant where she worked. The

9

couple raised her three children and his one child together. Maldonado indicated that he spoke English with his family and that it was the primary language in the home.

{¶ 29} Maldonado testified that he had learned English by talking with his wife, who is from Ohio, and that he had taken a couple of courses for English in the United States during the last couple of years. Maldonado reads instructional tools magazines from Lowes or Home Depot. When asked if he reads the newspaper, Maldonado responded that he "can read some but not everything. It's a lot of words I don't understand." Maldonado watches television in English. In conducting his business, Maldonado speaks with stores and banks in English. Maldonado uses both English and Spanish assembly instructions, and when he listens to music, he "sometimes" understands the English lyrics. Maldonado has employees and clients with whom he communicates in English.

{¶ 30} Upon questioning from Legacy's counsel, Maldonado acknowledged that he had answered questions for three or four hours without the assistance of an interpreter during his deposition and never indicated to Legacy's counsel that he did not understand a question. Maldonado testified, however, that for some questions, he "was guessing; I don't know exactly what are you talking about." Maldonado further stated that he had communicated with Legacy's representative, Mr. Brown, in English and sent text messages to him in English. Maldonado read aloud a portion of a text message that he had sent to Brown and agreed that it showed a good command of the English language. Maldonado stated that he acted as an interpreter between those in his crew who speak English and those who do not.

{¶ 31} When questioned by Kollin, Maldonado stated that his native and primary language was Spanish and that he understood English "sixty percent." Maldonado was requesting an interpreter because complex concepts were difficult to understand.

10

Maldonado was not a certified interpreter and knew construction terms from working in the field. His knowledge of English was self-taught.

{¶ 32} The court then inquired of Maldonado about his prior experience with litigation. Maldonado stated that he had been sued once before, but the case was dismissed. Legacy's counsel asked Maldonado why he had testified during his deposition that he had not previously been sued. Maldonado responded, "Probably I don't understand. This is why I ask for an interpreter for this case because I want to understand every single thing in this case. . . I want to understand everything. I no want nobody to trick me." Tr. (Day 1) 34-35. Maldonado acknowledged that he had not used an interpreter "for traffic court or for anything."

{¶ 33} The trial court conducted a second voir dire of Maldonado on the second day of trial, but it found that testimony not to be credible.

{¶ 34} Upon review of Maldonado's testimony, it was reasonable for Legacy to question whether Maldonado had limited English proficiency such that he required an interpreter to meaningfully participate in the trial. Maldonado had been in the United States for more than 25 years and communicates in English in his home with his family, as well as with his English-speaking crew, clients, and business associates. Maldonado's written text message reflected an ability to communicate clearly in writing about the construction project. He had participated in a multi-hour-long deposition, giving appropriate responses and without indicating a lack of understanding.

{¶ 35} However, Maldonado was from Mexico, Spanish was his primary language, he was educated in Spanish in Mexico, and his English was substantially self-taught. According to his deposition, he came to the United States when he was 24 years old. Some of Maldonado's responses to the court's voir dire questions used non-standard grammar

11

and reflected that he might misinterpret spoken English if it was not clearly articulated (such as the word "assemble") or was a legal term (such as "depo"). Although the trial court could have reasonably concluded that Maldonado did not require an interpreter to meaningfully participate at the trial, we question the trial court's conclusion that Maldonado's request for an interpreter was completely unfounded. The request for an interpreter was not frivolous merely because the court concluded the request lacked merit. *See State v. Leigh*, 2023-Ohio-91, ¶ 13 (2d Dist.) (distinguishing between "not meritorious" and "wholly frivolous" for purposes of filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967)).

{¶ 36} Significantly, we find no support for the trial court's conclusion that Maldonado's request for an interpreter was made merely for purposes of delay. It appears undisputed that Kollin raised the possibility of obtaining a Spanish-language interpreter for Maldonado at the final pretrial conference. On the morning of the bench trial, the trial court confirmed that no written motion for an interpreter had been filed, and it inquired whether Maldonado still wished to pursue an interpreter. At that time, Kollin explained his effort to secure the assistance of the interpreter suggested by the court, and when that interpreter was unavailable, that they had received contact information for a different interpreter, who was present that day. Kollin asked the court to allow Maldonado to use that individual as an interpreter at his own expense. Kollin did not ask for a continuance of the trial so that the court could locate an interpreter who was certified by the Ohio Supreme Court.

{¶ 37} With the record before us, it is unclear how the proceedings were delayed by Kollin's request for an interpreter such that sanctions were appropriate. Before proceeding with trial testimony, the court conducted a voir dire of Maldonado and concluded that an interpreter was not necessary. The delay in beginning the trial appears to have been brief, and given Legacy's objection to the use of an interpreter based on Maldonado's proficiency

12

with English, this voir dire likely would have occurred even if a written motion had been made prior to the trial date. After the trial court found that an interpreter was not necessary for Maldonado to meaningfully participate at the trial, the trial began without additional delay.

{¶ 38} In its written decision, the trial court stated that, after it ruled that Maldonado was proficient in English, it asked Kollin if he would withdraw his motion, that Kollin refused, and that Kollin indicated that he would appeal the court's decision as there was no interpreter available at the hearing to determine Maldonado's language proficiency. The court further wrote that it "adjourned the matter of [Maldonado's] proficiency until the following morning." This exchange with Kollin is not in the trial transcript, nor does the record reflect that the matter was put on hold until the following day. Rather, the court ruled that an interpreter was not warranted, Kollin asked that his interpreter be allowed to assist at his table, and when it was discovered that the interpreter had left, the trial proceeded with Maldonado as the first witness. The additional proceedings regarding Maldonado's request for an interpreter on the second day of trial appear to have been at the court's instigation, when it told the parties that it wanted to "revisit Mr. Kollin's untimely motion for an interpreter and his subsequent objection to the court's voir dire."

{¶ 39} On this record, we conclude that the trial court abused its discretion when it imposed sanctions based on Maldonado's request for an interpreter on the first day of trial. Accordingly, the assignment of error is sustained.

### IV. Conclusion

{¶ 40} The trial court's judgment is reversed.

. . . . . . . . . . . . .

LEWIS, P.J., and TUCKER, J., concur.

13